Kathleen **WARD**, Administratrix of the Estate of Charles E. Ward, deceased, Appellant in No. 18703

v.

**UNION BARGE LINE CORPORATION**, Appellant in No. 18704.

Nos. 18703, 18704.

United States Court of Appeals, Third Circuit.

Argued Dec. 14, 1970.

Decided May 10, 1971.

Hymen Schlesinger, Pittsburgh, Pa., for Kathleen Ward.

Frederick N. Egler, Egler, McGregor & Reinstadtler, Pittsburgh, Pa. (Robert S. Garrett, Pittsburgh, Pa., on the brief), for Union Barge Line.

Before HASTIE, Chief Judge, and FREEDMAN * and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This case is before the court on an appeal and cross-appeal from a judgment in an action for damages by the estate and survivors of a former seaman against his employer.

Decedent Charles E. Ward had worked for defendant, Union Barge Line Corporation, as a deckhand and mate for twenty years prior to May 13, 1963. Decedent suffered from rheumatoid arthritis beginning sometime in 1956 or 1957. He received cortisone and other steroid medication for this ailment beginning in 1958. The jury found that he knew himself to be permanently disabled by May 13, 1963.

Decedent had been examined by defendant's doctor in February of 1959 and given a "B" rating, fit for work. The records of the 1959 examination show that the decedent thought himself to be afflicted with rheumatoid arthritis, but that the doctor made no such definite diagnosis. Decedent was again examined by defendant's doctor in May of 1961. The doctor at that time determined that decedent was suffering from rheumatoid arthritis. He prescribed medication and rated decedent "C," fit for restricted duty. Despite this classification, the doctor told decedent that he was not fit for duty.

Notwithstanding the defendant employer's knowledge, or at least constructive knowledge, of decedent's arthritic condition, he was offered employment and did sporadically work between May of 1961 and May 13, 1963 when he became totally disabled and ceased to work. From May 13, 1963, until August 1, 1963, decedent was given full pay, and from August 1, 1963 until December 1, 1963, he was given half pay. Decedent formally retired on December 1, 1963. Thereafter he received retirement benefits based on total and permanent disability.

On April 20, 1966, decedent was admitted to Veterans Memorial Hospital in Pomeroy, Ohio, complaining of abdominal pain. He was found to have developed an ulcer, allegedly due to the prolonged steroid treatment. This condition was followed, in its turn, by obstructive jaundice requiring surgery. On May 10, 1966, Mr. Ward died of complications following the surgery.

Plaintiff commenced this action for damages on August 9, 1966. The factual theory underlying her claims is that the nature and conditions of employment aboard defendant's vessels caused, or at least aggravated, decedent's arthritic condition. This necessitated the steroid medication, which eventually caused the ulcer and jaundice, finally resulting in death following surgery. The complaint alleges three separate causes of action. The first claim is brought by decedent's widow in her capacity as administratrix of his estate. It is in the nature of a surviving action for personal injuries. The second claim is brought by the widow on her own behalf and on behalf of her minor daughter for wrongful death. The personal injury and wrongful death claims both assert these three theories of liability: (1) negligence, (2) unseaworthiness, and (3) breach of the duty to provide maintenance and cure. The third cause of action is for the costs of maintenance and cure incurred during decedent's incapacity prior to his death. The complaint alleges jurisdiction under 28 U.S.C. §§ 1331, 1332 and under general admiralty jurisdiction.

The district court denied all claims for damages for personal injuries and wrongful death and entered summary judgment for plaintiff in the amount of $6,148.75 for maintenance and cure between December 1, 1963 and May 10, 1966. The judgment below was support-

---

* Judge Freedman participated in the hearing and consideration of this appeal but died before decision.

ed in part by a general jury verdict for the defendant on the issue of liability due to negligence and by the jury's answers to three special interrogatories. For the reasons set forth below, we affirm.

## I.  The Action for Personal Injuries

■  A.  *Negligence.* It was alleged that defendant is negligent in calling decedent to work when it knew of his physical condition and in failing to provide a safe place to work. This claim is brought under the Jones Act [1] and was held barred by the three year statute of limitations imposed by that act. Plaintiff does not seriously contest this disposition on appeal and since decedent ceased work three years and three months prior to the commencement of this action, the district court was clearly correct.

■  B.  *Unseaworthiness.* The district court held that the claim for personal injuries based on unseaworthiness is barred by laches. Plaintiff now claims that the district court erred in finding laches. Although a finding of laches generally assumes both unreasonable delay and prejudice to the defendant,[2] this court has consistently held that if an action for personal injuries due to unseaworthiness is brought outside of the analogous three year period of limitations under the Jones Act, the plaintiff must plead and prove facts which excuse the delay and show why the defendant has not been prejudiced.[3] Neither the original nor the amended complaint contain any allegations addressed to this issue, and no such proof was introduced

below.[4] The trial court correctly held that the claim for personal injuries due to unseaworthiness is barred by laches.

■  C.  *Breach of the duty to provide maintenance and cure.* Relying on Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932), the district court held that the action for personal injuries for breach of the maritime duty to provide maintenance and cure is barred by the three year period of limitations under the Jones Act. Plaintiff argues that this period of limitations is inapplicable, and that the doctrine of laches should govern the availability of the action. In *Cortes* the court noted that under the general maritime law, if the failure to give maintenance and cure has caused or aggravated an illness, the seaman may recover consequential damages, but that this claim is extinguished at his death. The court went on to hold that the Jones Act provides an additional cause of action for negligent breach of the duty to provide maintenance and cure. At trial plaintiff withdrew any claim based on nonnegligent breach of the duty, acknowledging that under *Cortes* the remedy dies with the seaman leaving the Jones Act as the sole avenue for redress. The dictum in *Cortes*, that the general maritime action for damages for failure to provide maintenance and cure is extinguished at death, was rooted in the general proposition that "[d]eath is a composer of strife by the general law of the sea." 287 U.S. at 371, 53 S.Ct. at 174. This is no longer an accurate statement of the law. The court in *Cortes* supported this dictum by citing Western Fuel Co. v. Garcia, 257

---

1.  46 U.S.C. § 688.

2.  See, e. g., Sobosle v. United States Steel Corp., 359 F.2d 7 (3d Cir. 1966).

3.  Mroz v. Dravo Corp., 429 F.2d 1156 (3d Cir. 1970); Lipfird v. Mississippi Valley Barge Line Co., 310 F.2d 639 (3d Cir. 1962); Wounick v. Pittsburgh Consol. Coal Co., 283 F.2d 325 (3d Cir.), cert. denied, 364 U.S. 902, 81 S.Ct. 234, 5 L.Ed.2d 195 (1960); Taylor v. Crain, 195 F.2d 163 (3d Cir. 1952).

4.  Plaintiff has urged that we accept the rule of Larios v. Victory Carriers, Inc., 316 F.2d 63 (2d Cir. 1963), which he claims places the burden of establishing prejudice upon the defendant. However, even if we were sympathetic to this view and were at liberty to disregard precedent in this circuit, the plaintiff would not prevail. Under the rule established in *Larios*, "if the plaintiff proffers no pleading or presents no proof on the issue of laches, the defendant wins." 316 F.2d at 66.

U.S. 233, 240, 42 S.Ct. 89, 66 L.Ed. 210 (1921) and Lindgren v. United States, 281 U.S. 38, 43, 50 S.Ct. 207, 74 L.Ed. 686 (1930). These cases are progeny of The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886). Last term the United States Supreme Court overruled *The Harrisburg* in Moragne v. States Marine Lines, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), squarely holding that "an action does lie under general maritime law for death caused by violation of maritime duties." 398 U.S. at 409, 90 S.Ct. at 1792. Although Justice Harlan's opinion primarily discusses the existence of a wrongful death action, the petitioner there had sought damages for pain and suffering as well as for wrongful death, and the opinion should erase any doubt concerning the survival of actions under the general maritime law. Thus the Jones Act was not the sole remedy available to plaintiff for the failure to provide maintenance and cure, and the claim is not barred by the Jones Act period of limitations.

However, we uphold the district court's dismissal of this cause of action. We have already upheld the lower court's ruling that the unseaworthiness claim is barred by laches. By a parity of reasoning, the claim for personal injuries due to the failure to provide maintenance and cure is similarly barred by the doctrine of laches. This action was brought outside the analogous three year period of limitations under the Jones Act, and the plaintiff failed to plead or prove facts which would excuse the delay and show why the defendant had not been prejudiced. We reach this result without giving effect to plaintiff's withdrawal of the cause of action based on nonnegligent breach of the duty to provide maintenance and cure, this oral withdrawal having been made prior to the decision of the Supreme Court in Moragne v. States Marine Lines, *supra*.

## II. Action for Wrongful Death

A. *Negligence.* The issue of defendant's negligence in the wrongful death action went to the jury and result-ed in a verdict for the defendant. Plaintiff assigns numerous errors relating to the validity of this verdict.

██ The trial court instructed the jury that if it found the defendant to have been negligent and the decedent to have been contributorily negligent, it must diminish the damages in proportion to the amount of negligence attributable to the decedent. Plaintiff argues that the issue of contributory negligence should not have gone to the jury because (1) contributory negligence is not applicable to an action founded on maintenance and cure, and (2) there was no evidence of contributory negligence. These contentions are without merit. First, no claim based on the duty to provide maintenance and cure was presented to the jury. The jury rendered its verdict in a Jones Act action for wrongful death due to negligence, and the fact that the duty to provide maintenance and cure is viewed as absolute in no way undermines the propriety of the jury's consideration of contributory negligence. Second, there was ample evidence that decedent knowingly exposed himself to the conditions of employment while aware of his illness and there was some evidence that he failed to use certain available means of ventilation which would have alleviated some of the shipboard conditions complained of. The issue of contributory negligence was properly submitted to the jury on this evidence. See Mroz v. Dravo Corp., *supra*, 429 F.2d at 1163–1164; cf. Mumma v. Reading Co., 247 F.Supp. 252 (E.D.Pa. 1965).

██ Plaintiff further insists that the trial court failed to apprise the jury of the employer's duties to provide a reasonably safe place to work and to act as guardian of the seaman. We have examined in detail both the actual instructions and those requested by the plaintiff at trial, and we can perceive no error. It is understandable that a litigant should prefer the nuances contained in the charges he has formulated, but the trial judge is not compelled to adopt re-

quested instructions. See Joseph T. Ryerson & Son, Inc. v. H. A. Crane & Brother, Inc., 417 F.2d 1263, 1267 (3d Cir. 1969).

■ The final issue raised with respect to the jury verdict stems from the denial of plaintiff's challenge for cause of four jurors who had served in a trial involving the same defendant and similar issues, and in which the attorney for the present plaintiff also represented the claimant. Plaintiff also complains of the court's subsequent refusal to allow *voir dire* examination of these prospective jurors for possible bias. Since there was no transcript of the jury selection proceedings, and since Judge Miller who was then presiding did not have sufficient recollection to issue a Certificate in Lieu of Transcript, these challenges do not appear in the record. Although Rules 10(c) and 10(e), Fed.R.App.P., established procedures for correcting omissions from the record which were not followed in this case, Rule 10(e) gives the courts of appeals flexibility in this area.[5] Defendant's brief on appeal acknowledges that the challenges were made under the alleged circumstances, and we may treat this acknowledgment as equivalent to a stipulation in order to reach this issue. Giving the defendant's brief the effect of a stipulation under Rule 10(e), we nonetheless hold that it was not error to deny plaintiff's challenge for cause of four prospective jurors. It is clear that jurors are not disqualified merely because they have sat in cases involving similar issues.[6] Plaintiff here enlists the additional factor that the prior case involved the same defendant. We have been directed to no authority which would indicate that such is a basis for juror disqualification, nor do we see anything inherently prejudicial in such prior jury experience. There may be instances where events in the courtroom at the prior proceeding, if brought to the court's attention, would impel the disqualification of a juror who had sat for the prior proceeding. Counsel for plaintiff has pointed to no relevant circumstance beyond the identity of the defendant, his identity and certain similar issues in both cases. In multiparty proceedings jurors are frequently called upon to make separate evaluations of evidence with respect to different but similar claims involving some of the same parties. We should think it would be no more difficult for a juror to exercise independent judgment in successive cases such as these.

■■ Nor do we think it was error for the presiding judge to disallow *voir dire* examination of the prospective jurors for possible bias or prejudice arising from these circumstances. In Kiernan v. Van Schaik, 347 F.2d 775 (3d Cir. 1965), this court held that a plaintiff may make reasonable inquiry of prospective jurors probing their possible connection with the insurance industry. The court stated,

"While the practical limitations of a trial make it impossible to permit the parties on *voir dire* to penetrate deeply into the minds and emotions of prospective jurors, which are far too subtle and complex to be fully judged by surface scrutiny, at least the *visible* ties which generally bind men to one side of a cause are clearly within the limited range of appropriate investigation on voir dire." 347 F.2d at 781 (emphasis added and footnote omitted).

Interrogation was not mandated in this case by *Kiernan*. The asserted ground for disqualification in this case was already out in the open, and had already been ruled upon. *Voir dire* could only have served to penetrate the "minds and emotions" of the prospective jurors;

---

5. See 9 Moore, Federal Practice ¶ 210.08 [2]; cf. Carroll v. Frontera Compania Naviera, 390 F.2d 311, 315 (3d Cir. 1968).

6. United States v. Cooper, 332 F.2d 790 (3d Cir. 1964); accord, Casias v. United States, 315 F.2d 614 (10th Cir.), cert. denied, 374 U.S. 845, 83 S.Ct. 1901, 10 L.Ed.2d 1065 (1963); Cwach v. United States, 212 F.2d 520 (8th Cir. 1954); Haussener v. United States, 4 F.2d 884 (8th Cir. 1925).

such examination is inappropriate under the *Kiernan* rationale.

B. *Unseaworthiness.* The district court dismissed plaintiff's wrongful death claim founded on unseaworthiness by reliance on *The Harrisburg, supra.* As mentioned earlier, however, *The Harrisburg* was overruled by the Supreme Court in Moragne v. States Marine Lines, *supra,* which was decided subsequent to the district court decision in this case. There is now a cause of action under the general maritime law for death caused by unseaworthiness. However, after a careful review of the evidence, we have concluded that a new trial on this claim would be pointless and that the ruling of the lower court must be affirmed.

There is no evidence in the record to indicate that the vessels on which decedent worked were unseaworthy. The evidence tended to show that decedent's work was strenuous and often had to be done during inclement weather, but it did not show that the vessels themselves were in substandard condition. And while there is authority to indicate that the incompetence of the captain [7] or the unfitness of the crew [8] renders a vessel unseaworthy, it is now clear that such incompetence or unfitness must rise to the level of a hazard of the vessel and that mere acts of negligence do not constitute unseaworthiness. Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971). Plaintiff's theory of unseaworthiness is that the the master negligently permitted an arthritic to work aboard his vessel and thus failed to take proper steps to safeguard the health of decedent by preventing him from working. This does not amount to an allegation of unseaworthiness.[9]

It is arguable that due to the intervening change in the law, plaintiff should be granted a new trial in order more vigorously to introduce evidence of unseaworthiness. We do not feel that a new trial would be appropriate in this case. The amended complaint alleged that defendant failed "to furnish Ward with a seaworthy vessel and tow, equipped with proper tools, appliances and equipment and operated with a sufficient and competent crew." Plaintiff introduced no such evidence and does not suggest that such evidence would be proffered in a new trial. Instead, the plaintiff's brief makes clear that she seeks to establish unseaworthiness by showing that the captain negligently permitted an arthritic to work. The recent decision of the Supreme Court in Usner v. Luckenbach Overseas Corp., *supra,* compels our conclusion that there is no possibility of recovery for wrongful death from unseaworthiness in this case.[10]

C. *Breach of the duty to provide maintenance and cure.* The district court denied the claim for wrongful death caused by breach of the obligation to provide maintenance and cure. It found the record "devoid of any evidence tending to establish the deprivation of maintenance and cure as a cause of death." The district court did not rely on *The Harrisburg, supra,* as it had with the unseaworthiness claim, for the proposition that there is no action for wrongful death under the general maritime law. Thus the Supreme Court's decision

7. See Spellman v. American Barge Line Co., 176 F.2d 716 (3d Cir. 1949).

8. Boudoin v. Lykes Bros. S.S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354 (1955); Waldron v. Moore-McCormack Lines, Inc., 386 U.S. 724, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1967).

9. A different problem would be presented if a crew member's arthritis prevented him from properly performing his duties and improper performance of his duties caused injury to another seaman or to himself.

10. Having decided that there is no possibility of recovery for wrongful death from unseaworthiness on the factual theory advanced by plaintiff, we need not in this case decide the complex issue of the time limitation on commencing such an action. That issue was left open by the Supreme Court. Moragne v. States Marine Lines, *supra,* 398 U.S. at 406, 90 S.Ct. 1772, 26 L.Ed.2d 339.

in Moragne v. States Marine Lines, *supra*, in no way affects the district court's decision on this claim. Our examination of the record confirms that there was no evidence tending to establish that death was caused by a lack of maintenance and cure. Decedent had received medical care and medication from the incipient stages of his illness. There is no evidence showing that if he had received more or different treatment he would not have died. If anything, the evidence shows that death was caused by the inevitable side effects of necessary medical care, not by the lack of medical care.[11]

We know of no case which has so extended the obligation to provide maintenance and cure to hold an employer liable for the consequences of offering work to a seaman who is suffering from a chronic illness. This is not to be confused with the case where a seaman falling ill during a voyage is made to work and is denied proper rest and treatment. There the seaman's dependency is manifest and the employer's role as guardian demands that the seaman be given proper care, including relief from duty. See, e. g., The Iroquois, 194 U.S. 240, 24 S.Ct. 640, 48 L.Ed. 955 (1904). Here proper care has been given and the employer's liability, if any, for the consequences of further employment is under the Jones Act.[12]

The judgment of the district court in No. 18,703 will be affirmed.

### III. The Maintenance and Cure Judgment in Plaintiff's Favor

As noted earlier, the district court entered summary judgment in favor of plaintiff in the amount of $6,148.75 for actual maintenance and cure allegedly owed plaintiff's decedent but never provided. The parties had stipulated a rate of accrual of maintenance and cure, and the amount of the judgment represents liability from December 1, 1963, the date of decedent's formal retirement, to May 10, 1966, the date of death; the judgment was subsequently amended adding $1,640.63 in interest. Defendant appeals this judgment, assigning three points of error.

Defendant first contends that since decedent was totally and permanently disabled as of December 1, 1963, and since cure or amelioration of condition was not possible thereafter, the award of maintenance and cure was improper. In Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949), it was held that the liability for maintenance and cure does not extend beyond the time when the maximum possible cure has been effected. However, this limitation has been interpreted in this court to extend the obligation where medical care is needed to arrest further progress of the disease or to relieve pain. Neff v. Dravo Corp., 407 F.2d 228 (3d Cir. 1969); see also Yates v. Dann, 124 F.Supp. 125 (D.Del.1954), aff'd, 223 F.2d 64 (3d Cir. 1955); Gibson v. United States, 100 F.Supp. 954 (E.D.Pa.1951), aff'd, 200 F.2d 336 (3d Cir. 1952).

Also, it is claimed that credit should have been given against the amount found due as cost of maintenance and cure for the so-called "red-line time" during which time plaintiff's decedent was carried on defendant's payroll while ill at home from August 1, 1963 to December 1, 1963. This point was conceded at trial to be governed by the collective bargaining agreement under which decedent was employed. Defendant-appellant has not put that contract into the record and we therefore must presume that its terms do not entitle it to these credits. In the absence of such a contract provision, defendant is not entitled to credit towards its obligation of main-

---

11. Cf. Neville v. American Barge Line Co., 276 F.2d 117 (3d Cir. 1960); Sims v. United States of America War Shipping Adm'n, 186 F.2d 972 (3d Cir.), cert. denied, 342 U.S. 816, 72 S.Ct. 31, 96 L.Ed. 617 (1951).

12. We do not reach the issue of the timeliness of commencing an action for wrongful death due to the failure to provide maintenance and cure. See note 10 supra.

tenance and cure for sums paid not specifically for such purpose. See Haywood v. Jones & Laughlin Steel Corp., 107 F. Supp. 108 (W.D.Pa.1952).

■ Defendant's final contention is that the period for computing the award should not have included the period from April 20, 1966 until May 10, 1966, when decedent was in the Veterans Memorial Hospital in Pomeroy, Ohio. Since the duty to provide maintenance and cure does not exceed the seaman's need, it has been stated that there is no claim where gratuitous medical services are provided. Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 531, 58 S.Ct. 651, 82 L.Ed. 993 (1938). However, there is nothing in the record which would indicate that the Veterans Memorial Hospital in Pomeroy, Ohio, is run by the Veterans' Administration or that Ward received gratuitous medical services. Moreover, counsel for defendant waived this claim at trial.

The judgment of the district court in No. 18,704 will be affirmed.

No award of costs shall be made with respect to either the appeal or the cross-appeal.