Mickey **FRANCIS** and Norma **Francis**, his wife, Plaintiffs,

v.

**PAN AMERICAN TRINIDAD OIL COMPANY**, a Delaware Corporation, and Santa Fe Marine, Inc., a Delaware Corporation, Defendants.

Civ. A. No. 3819.

United States District Court, D. Delaware.

May 1, 1975.

B. Wilson Redfearn, Tybout, Redfearn & Schnee, Wilmington, Del., and Paul S. Edelman, Kreindler & Kreindler, New York City, of counsel, for plaintiffs.

Ernest S. Wilson, Jr., Wilmington, Del., and T. E. Byrne, Jr., Krusen, Evans & Byrne, Philadelphia, Pa., of counsel, for defendant Pan American Trinidad Oil Co.

Albert L. Simon, Wilmington, Del., for defendant Santa Fe Marine, Inc.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

Plaintiff Mickey Francis and his wife Norma Francis, Trinidad residents, bring this diversity action seeking compensation for personal injuries that Francis allegedly received while he was employed as a deep-sea diver aboard a movable drilling barge on the coastal shelf off Trinidad. In an earlier decision of this Court, Francis v. Pan American Trinidad Oil Company, 59 F.R.D. 631 (D.Del.1973), a motion of the original sole defendant, Pan American Trinidad Oil Co. (Amoco), for summary judgment was denied, and plaintiffs were permitted to amend their complaint to join Santa Fe Marine, Inc. (Santa Fe) as an additional defendant. Now before the Court is a motion by the added defendant, Santa Fe, seeking either dismissal of the complaint or summary judgment on the grounds of laches and/or the statute of limitations. Plaintiffs are resisting the motion on the grounds that the action against Santa Fe was timely filed or, alternatively, that the filing of the action against Santa Fe should be deemed to relate back, under Rule 15(c) Fed.R.Civ.P., to the date of the filing of the original complaint.

Although some facts necessary for an evaluation of Santa Fe's motion are contained in the earlier decision, a short summary of the facts bearing on the present issue is appropriate.

On December 5, 1967, plaintiff Mickey Francis, an employee of Corrosion Protection Manufacturing, C.A., (a Trinidad corporation that is a wholly owned subsidiary of Underseas Pipeline Company, C.A., a Venezuelan corporation) was injured while performing a dive. The dive was being conducted pursuant to a contract between Underseas Pipeline Co. and the original defendant Amoco and was performed from The Blue Water III, an oil drilling barge owned by Santa Fe. Two years later, on December 4, 1969, the plaintiffs filed an action in this Court naming Amoco as sole defendant. On January 22, 1970, defendant Amoco filed a motion to dismiss the action on the grounds of forum non conveniens. Paragraph 5 of that motion stated as follows:

> In connection with the exploration of the aforesaid concessions, Amoco entered into a certain contract with Santa Fe Marine, Inc., a corporation having its principal office and place of business at 3311 Richmond Avenue, Houston, Texas. Santa Fe Marine, Inc. (hereinafter 'Santa Fe') was the owner of a certain drilling vessel known as the BLUE WATER III which, at all times material hereto, was owned, operated and controlled by Santa Fe.

In May, 1970, in answer to an interrogatory of plaintiffs, defendant Amoco repeated this information as follows:

> 35. State who owned the Blue Drilling Barge No. 3, and as to the owner, state the following:
>
> (a) the nation and/or state of incorporation;
>
> (b) the principal place of business.
>
> A. Blue Water Drilling Barge No. 3 was owned and operated by Santa

Fe Marine, Inc., 3311 Richmond Avenue, Houston, Texas. The state or nation of incorporation is unknown.

The state of incorporation turned out to be Delaware.

On June 17, 1970, in an affidavit filed in opposition to defendant's forum non conveniens motion, plaintiffs' Trinidad counsel, Victor Nunez, stated that "Blue Water III Barge was owned by Santa Fe Marine, Inc., a corporation of the State of Louisiana, United States of America, with a Port of Registration being New Orleans, Louisiana." At his deposition, taken on December 10, 1970, Francis was asked "Now who manned the barge?" To which he responded, "I know the owner of the barge is Santa Fe Marine."[1]

The record as to when Santa Fe first learned of this pending action is also a matter of importance. The amended complaint naming Santa Fe as a defendant was actually filed May 25, 1973, five and a half years after the injury, but plaintiffs had moved for leave to amend on December 21, 1971, and Santa Fe admits that it received notice of this pending motion on December 31, 1971.[2] Santa Fe further admits that it had notice and knowledge that Francis was injured on December 4, 1967 (The Blue Water III's log book recorded the incident). Plaintiff alleges that a visit to Trinidad by defendant Amoco's attorney in March, 1971, gave Santa Fe notice of the present suit. At that time, Amoco's attorney visited the corporate offices of Santa Fe Drilling Co. (apparently a corporate relative of Santa Fe Marine) in Trinidad to inspect Santa Fe's records regarding the incident and also went aboard The Blue Water III to conduct interviews. Santa Fe asserts that although some of its employees may have learned of the suit against Amoco at this time, no corporate officers received this information. Further, even those employees who may have learned of the suit would have had no reason to assume that, but for a mistake by plaintiffs, Santa Fe would also have been named as a defendant.[3]

In summary, the suit against Santa Fe was actually filed five and a half years after the injury; Santa Fe had notice that plaintiffs intended to bring them into the suit a little more than four years after the injury; certain of Santa Fe's employees learned of the suit against Amoco approximately three years and three months after the injury; and through the ship's log, Santa Fe learned of the injury itself on the day that it occurred.

Prior to deciding whether plaintiffs' claim against Santa Fe is barred by the statute of limitations and/or laches, this Court must first determine what standards of timeliness should govern. Plaintiffs' complaint appears to allege four distinct causes of action: (1) negligence; (2) unseaworthiness; (3) strict liability based on an ultrahazardous activity (all alleged by Mickey Francis); and (4) loss of services, soci-

---

1. Plaintiffs' counsel has filed an affidavit asserting that only after certain discovery in Trinidad on December 9 and 10, 1971, was it learned that "the drilling vessel upon which the plaintiff was working was owned by Santa Fe Marine, Inc., a Delaware corporation," and that immediately thereafter, on December 21, 1971, plaintiffs moved to amend its complaint to add Santa Fe. While this statement may be technically correct, i. e., plaintiff might not have previously known that "Santa Fe Marine, Inc., *a Delaware corporation*", was the owner of the barge, plaintiffs had for nearly two years known Santa Fe's business address and The Blue Water III's port of registry.

2. This notice was effected by a letter sent to Santa Fe's legal office by Amoco's counsel in this action.

3. The Court was informed of this March, 1971, visit to Trinidad by letters from the parties involved. The assertions contained in these letters are not in affidavit form, as required by Rule 56(e), Fed.R.Civ.P. Even if the information contained in these letters were viewed in the light most favorable to plaintiffs, certain employees of Santa Fe received actual notice of the present litigation some 39 months after the accident.

ety and consortium (alleged by Norma Francis).

■ Although such is not obvious from the face of the complaint, plaintiffs have chosen to characterize the negligence claim as arising under the Jones Act, 46 U.S.C. § 688. (See plaintiffs' brief p. 11). The negligence claim is therefore governed by an express three-year limitation, 45 U.S.C. § 56.[4] Hence, since there is no claim that the statute has been tolled or the defendants estopped, this Jones Act claim is barred unless plaintiffs' amendment is found to relate back to the date of the filing of the original complaint.[5]

■ The unseaworthiness claim, however, is not based on statute but is rooted in federal maritime law. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409, 74 S.Ct. 202, 98 L.Ed. 143 (1953). Accordingly, despite the fact that this is a diversity action under 28 U.S.C. § 1332, plaintiffs' rights on the unseaworthiness claim are not to be determined under the principle established in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Further, even though the instant suit is an action at law, this Court is required to measure the timeliness of plaintiffs' claim in the same manner as would an admiralty court. See, e.g., Oroz v. American President Lines, Ltd., 259 F.2d 636 (2nd Cir. 1958), cert. denied, 359 U.S. 908, 79 S. Ct. 584, 3 L.Ed.2d 572 (1959). There is no statute of limitations in admiralty. Rather, the court will determine the timeliness of the actions using the doctrine of laches. Laches principles require that plaintiffs' delay in bringing suit be measured against the statutes of limitations for analogous state or federal causes of action. In this Circuit, the analogous statute of limitations against which the timeliness of plaintiffs' unseaworthiness claim is to be measured is the three-year limitation contained in the Jones Act. Ward v. Union Barge Line Corp., 443 F.2d 565, 568 (1971); Lipfird v. Mississippi Valley Barge Line Co., 310 F.2d 639, 641 (1962).[6]

---

4. That the three-year limit in the Federal Employers Liability Act, 45 U.S.C. § 56, applies to the Jones Act is clear. McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 225, 78 S.Ct. 1201, 2 L.Ed.2d 1272, n. 6 (1958).

5. Under Burke v. Gateway Clipper, Inc., 441 F.2d 946 (3rd Cir. 1971), defects in a Jones Act count cannot be cured even if the Jones Act count is joined with a still viable maritime count. Prior to *Burke*, the issue was not free from doubt. See, Gilmore and Black, The Law of Admiralty 350 (2d ed. 1975).

6. The Court of Appeals has thus adopted the position suggested by Justice Brennan in his concurring opinion in McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 229–30, 78 S. Ct. 1201, 2 L.Ed.2d 1272. If this Court should instead look to the analogous state statute of limitations as the opinion of the court in *McAllister* suggests, the result here would not differ. The analogous Delaware statute appears to be the two-year statute for personal injury actions, 10 Del.C. § 8118. Under the *McAllister* rule, no state statute can reduce below three years the period for bringing an unseaworthiness claim when that claim is joined to a Jones Act negligence claim, so the result is still measurement against a three-year statute. Plaintiffs here urge, however, that the statute of limitations to which this Court should refer is the statute in Trinidad, which plaintiffs assert is four years. In support of this view, plaintiffs cite Oroz v. American President Lines, 259 F.2d 636, 639 (2nd Cir. 1958), cert. denied, 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed.2d 572 (1959). In that case, suit was brought in Federal Court in New York seeking redress for a maritime injury that had occurred in New Jersey territorial waters. There the Second Circuit looked to § 13 of The New York Civil Practice Act (now N.Y. Civ.Prac. Law and Rules § 202 (McKinney 1972)). Section 13 barred suit in New York if suit was barred in the state where the cause of action arose. This use of the forum state's "borrowing statute" is, of course, very different from merely referring to the statute of limitations at the place of the injury. The Delaware law that is analogous to the New York law to which the Second Circuit referred is 10 Del.C. § 8120. Under that statute, when a cause of action arises outside of Delaware, action cannot be brought in Delaware after expiration of whichever is shorter, the time limit of Delaware law or the time limit of the law of the place where the action arose. Accordingly, were this Court to apply the *Oroz*

■ The timeliness of plaintiffs' complaint is not, however, to

> be determined merely by a reference to and a mechanical application of the statute of limitations. The equities of the parties must be considered as well. Where there has been no inexcusable delay in seeking a remedy and where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief. Gardner v. Panama Railroad Co., 342 U.S. 29, 31, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951).

See also, Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 533, 76 S.Ct. 946, 100 L.Ed. 1387 (1956).

■ In applying the *Gardner* rule, it is settled that "[t]his Circuit requires the plaintiff to come forward and prove that his delay was excusable and that it did not unduly prejudice the defendant. Burke v. Gateway Clipper, Inc., 441 F.2d 946, 949 (1971). See also, Ward v. Union Barge Line Corp., 443 F.2d 565, 568 (1971), and cases cited therein.

■ The analogous statute of limitations for plaintiffs' third assertion, that since an ultrahazardous activity was involved the defendants are absolutely liable, is a difficult question. It is not clear to this Court that a maritime tort can give rise to such a cause of action. Assuming such an action exists, however, this Court concludes that it must be dealt with in the same manner as the unseaworthiness count. This conclusion is based on similarities between the two causes of action, including the fact that unseaworthiness is also a strict liability tort. See, e. g., Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L. Ed.2d 941 (1960); Earles v. Union Barge Line Corp., 486 F.2d 1097 (3rd Cir. 1973). If one event gives rise to two quite similar causes of action, it is anomalous to have the two causes of action governed by different standards of timeliness. Cf., McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272. Moreover, plaintiffs have not located any statute of limitations providing a preferable analogy.[7]

■ Plaintiff Norma Francis' claim for loss of services, society and consortium also presents difficult questions. Again it is not clear that a maritime tort will give rise to such an action.[8] If, however, such an action can lie, this Court will follow the general rule that bars such actions by the wife if the husband is time-barred from seeking redress for his personal injuries.[9]

---

rationale, it would look to § 8120 and plaintiffs' position would not be advanced, for the shorter Delaware law would apply.

7. See note 6, *supra*.

8. The Third Circuit has approved such actions, see New York & Long Branch Steamboat Co. v. Johnson, 195 F. 740 (3rd Cir. 1912), but the more recent and widely-cited Igneri v. Cie de Transports Oceaniques, 323 F.2d 257 (2nd Cir. 1963), cert. denied, 376 U.S. 949, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964), holds that such an action does not lie. Dicta in Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 589, 94 S.Ct. 806, 39 L. Ed.2d 9 n. 25 (1974) appears, however, to approve the earlier Third Circuit view.

9. See Annot., 36 A.L.R.3d 900, 907 (1971). The rule that a wife's right to recover for loss of consortium is dependent upon the husband's right to maintain an action for personal injuries is also the law in Delaware. Stenta v. Leblang, 185 A.2d 759, 762 (Del.1962). At least one admiralty court has referred to such a forum state rule when seeking guidance on a similar claim. In Sanseverino v. Alcoa Steamship Co., 276 F.Supp. 894 (D.Md.1967), a case somewhat analogous to the one presently before this Court, the timeliness of a loss of consortium claim was at issue. In that case, Judge Thomsen followed *Igneri* note 8, *supra*, in finding no such action would lie, but then he went on to add that even if such action were recognized, he would follow the Maryland rule found in Deems v. Western Maryland Ry., 247 Md. 95, 231 A.2d 514 (1967), that a loss of consortium action could not lie if action on the husband's injuries was barred. 276 F.Supp. 896, n. 2. The rule that a wife's loss of consortium action is time-barred if the husband's right of action for personal injury is time-barred has not, however, been universally adopted. See Hockett v. American Airlines, Inc., 357 F.Supp. 1343 (N.D.Ill.1973).

In sum, a three-year statute of limitations applies to the Jones Act count, and for a variety of reasons a three-year period is also an appropriate standard by which to measure the timeliness of the other three counts. With respect to the latter three counts, however, the three-year standard will be tempered by the admiralty doctrine of laches.

In this Circuit, plaintiffs must show both lack of prejudice to Santa Fe and excuse for their own delay to avoid the statute of limitations. In this case, plaintiffs have been able to show neither. Santa Fe contends that it has been prejudiced both by passage of time and by its absence at depositions that occurred subsequent to the passage of the three-year limit. Plaintiffs have not been able to refute this contention. Further, plaintiffs are without an adequate excuse for their delay. They had legal counsel more than one year prior to the expiration of the three-year limit, and Francis, as well as his Trinidad and American counsel, knew that the ship owner was Santa Fe Marine, Inc., long before the three-year period expired. Further the address of Santa Fe Marine and its port of registry were also known.[10] It is true that in the early stages of this suit, the parties were involved in litigating a forum non conveniens motion, but this offers no excuse for failing to initiate suit against Santa Fe.

Having determined that absent "relation back", all of plaintiffs' claims will be time-barred, this Court must now turn to Rule 15(c) of Fed.R.Civ.P.

Under certain conditions specified in Rule 15(c), an amendment to a complaint is deemed to relate back to the time of the filing of the original pleading. In the instant case, such relation back would obviate any question of timeliness. Rule 15(c) states in pertinent part:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Although courts do not agree on whether the terminology "changing the party" can encompass "adding a party", this Court will assume that such an addition is permissible[11] and will proceed to test plaintiffs' amendment against the explicit requirements of the rule.

Plaintiffs' amendment adding Santa Fe as a defendant clearly meets the requirement of arising out of the same occurrence set forth in the original pleading. The notice requirement of Rule 15(c)(1) has not, however, been met. Notice of an injury is not the same as "notice of the institution of the action"[12], and plaintiffs have failed to show that within three years of the alleged injury, Santa Fe had any notice of the suit against Amoco. Further, even if Santa Fe had timely knowledge of the suit against Amoco, Rule

---

10. Plaintiffs' Trinidad counsel did incorrectly believe that Santa Fe was incorporated in Louisiana, but plaintiffs have not alleged that this misinformation excuses their delay.

11. At least two Circuits appear to take a more restrictive view. Marlowe v. Fisher Body, 489 F.2d 1057, 1064 (6th Cir. 1974); Graves v. Central Insurance Corp., 412 F.2d 583 (10th Cir. 1970). Judge Layton in this District has, however, offered a well-reasoned criticism of that position. Yorden v. Flaste, 374 F.Supp. 516 (D.Del.1974).

12. Craig v. United States, 413 F.2d 854 (9th Cir. 1969), cert. denied, 396 U.S. 987, 90 S. Ct. 483, 24 L.Ed.2d 451 (1969); Slack v. Treadway Inn of Lake Harmony, Inc., 388 F.Supp. 15 (M.D.Pa.1974).

15(c)(2) requires that a party "knew or should have known that, but for a mistake concerning the identity", the suit would have been against it. In this case, plaintiffs were aware of Santa Fe's ownership of the barge well prior to the running of the statute. Hence, even if Santa Fe had timely knowledge of the suit against Amoco, it would have had no reason to suspect that plaintiffs had made a mistake—as opposed to a strategic choice of defendant.[13]

 For the foregoing reasons, the amendment adding Santa Fe as a defendant does not relate back, and Santa Fe is awarded summary judgment [14] as against plaintiffs.[15]

Submit order.

---

13. In Williams v. Avis Transportation of Canada, Ltd., 57 F.R.D. 53 (D.Nev.1972), a "mistake" within the meaning of Rule 15(c)(2) was held to exist "whenever a party who may be liable for actionable conduct alleged in the Complaint was omitted as a party defendant." Such an expansive definition of "mistake" has not, however, been widely accepted. See Note: Federal Rule of Civil Procedure 15(c): Relation Back of Amendments, 57 Minn.L.Rev. 83, 117–20 (1972). This Court would read the mistake requirement of Rule 15 as covering cases of misnomer as well as cases wherein defendant's conduct creates an estoppel. See 3 J. Moore, Federal Practice ¶ 15.15[4.–2], at 1050 (2 ed. 1974). The expansive view taken in *Williams* must, however, be rejected, for such a position renders the requirement of 15(c)(2) redundant with that of 15(c)(1). See Minn.L.Rev. *supra*.

14. Since matters outside the pleadings were presented to the Court, summary judgment, rather than dismissal, is appropriate. See Rule 12(c), Fed.R.Civ.P.; Carter v. Stanton, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L. Ed.2d 569 (1972).

15. After plaintiffs filed the amended complaint naming Santa Fe as an added defendant, the original sole defendant, Amoco, filed a cross-claim against Santa Fe. The status of that cross-claim is not, however, an issue presently before this Court.