Veronica **COX**, Administrator of the Estate of William D. Cox, Plaintiff,

v.

**DRAVO CORPORATION**, Defendant.

Civ. A. No. 68–380.

United States District Court, W. D. Pennsylvania.

March 22, 1974.

Schlesinger & Schlesinger, Pittsburgh, Pa., for plaintiff.

Bruce R. Martin, Pittsburgh, Pa., for defendant.

## FINDINGS AND OPINION

WEBER, District Judge.

The plaintiff in this action filed a complaint for maintenance and cure and for consequential damages arising from defendant's negligent failure to furnish him maintenance and cure. The action was filed by the plaintiff in his lifetime and upon his death his administratrix was substituted as plaintiff.

The plaintiff had previously filed an action at Civil Action No. 64–724 under the Jones Act and General Maritime Law for personal injury damage allegedly suffered by reason of the negligence of his employer and the unseaworthy condition of the vessel. In that action the plaintiff claimed damages for pain and suffering, past and future, and loss of earnings, past and future. The plaintiff's pretrial statement in that action repeats the allegations of future disability. The plaintiff produced medical testimony to support a claim of permanent and total disability and the question of impairment of future earning capacity was submitted to the jury. In the trial of the former action it was shown that decedent had not worked from the time of the accident until the date of trial, that he was earning about $7,600 a year prior to the date of the accident, and that he had a life expectancy of between twenty-six to thirty-one years. Plaintiff's counsel argued that the total loss of future earnings over a twenty-one year work expectancy would be about $160,000 which the jury would be obliged to reduce to present worth.

The jury returned a verdict for the plaintiff in the amount of $75,000.

No claim for maintenance and cure was made in the action at Civil Action No. 64–724 and the jury was specifically instructed that they were not to consider any claim for plaintiff's medical expenses. The jury's verdict was rendered January 21, 1966 and the employer continued to pay maintenance until December 6, 1966.

The trial of the present action was held before the court sitting without jury. The plaintiff called the seaman's widow and the son who testified that plaintiff was unable to perform any strenuous activity, that he was troubled with headaches and dizzy spells, wore a neck brace, and a back brace, and took medicines and physical therapy treatment prescribed by his doctor during the period following the jury verdict in the prior case. They testified that to their observations the therapy treatments made the decedent feel better and would relieve his aches and pains.

The plaintiff also produced a physiotherapist who rendered physiotherapy treatments at the direction of plaintiff's treating physician from a period shortly after plaintiff's accident, first while he was an in-patient in the hospital between July 6, 1964 and August 5, 1964, and later as an outpatient with decreasing frequency up until May 1972. At the beginning therapy treatments were rendered about three times per week and tapered off to one time per week, one time every two weeks, and finally about one time per month. In the year 1970 plaintiff appeared fourteen times for treatment and in the year 1971 six times.

Plaintiff also produced Dr. Samuel Sherman, a physical rehabilitation specialist, who examined plaintiff and recommended further physiotherapy treatments. During the course of his examinations he found the need for additional physical therapy and recommended the wearing of a corset or back brace. He also considered the effect of possible spinal surgery which the plaintiff did not desire because of the risks involved and the uncertainty of any beneficial result. Dr. Sherman testified that the effect of such medical care and physiotherapy was solely the relief from pain and discomfort. He testified that no cure would be effected from such treatments and they would not arrest the progressive or deteriorating physical condition of the plaintiff. He noted during his examinations that plaintiff remained totally and permanently disabled.

It was stipulated during the trial that in addition to the testimony taken the court would consider the entire record of the action at Civil Action No. 64–724 as being introduced into the evidence in this case.

In the present action the plaintiff claims maintenance from and after December 7, 1966, the date to which his employer continued to pay the maintenance. Plaintiff also demands that portion of his medical expenses which the defendant had failed to pay prior to the trial of the action at Civil Action No. 64–724 and the medical expenses which he incurred thereafter up to the date of his death on August 6, 1973. In addition to the amounts claimed for maintenance and cure plaintiff claims the consequential damages from the negligent failure and refusal of the defendant to continue to provide maintenance and cure.

Defendant asserts that all claims merged in the judgment in the prior verdict at Civil Action No. 64–724; that plaintiff reached maximum recovery prior to the first trial; that because at all times material plaintiff was able to pay for any necessary treatment his own conduct bars any recovery for conse-

quential damages for aggravation or prolongation of his injuries due to the failure to furnish cure; that plaintiff's previous claim of total disability now estops him from claiming that he has a right to cure; and that there is no showing that the claimed medical treatment would be curative or arrest the progress of his disability.

The classic doctrine of admiralty law is that a seaman is entitled to receive maintenance and cure until he reaches the point of maximum medical recovery possible. Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 [1962]; Salem v. United States Lines Co., 370 U.S. 31, 82 S.Ct. 1119, 8 L.Ed.2d 313 [1962]. The court relied on its prior decisions in Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 [1938], and Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 [1949], which held that the plaintiff is not entitled to maintenance and cure beyond the time when maximum cure is possible. He is not entitled to maintenance and cure as long as he is disabled nor to "ease attacks of headaches and epileptic convulsions." 336 U.S. 511, at p. 513, 69 S.Ct. 707, at p. 708.

In this circuit, however, the doctrine has been more narrowly defined. In Gibson v. United States, 100 F.Supp. 954 [E.D.Pa.1951], the court faced a situation in which the disabled seaman had suffered a heart attack. The curative treatment claimed consisted of sedatives and other medication designed to relieve Gibson of chest pains and other discomfort. He was still taking medication at the time of trial. As a result of this treatment and medication Gibson's pains were reduced in number and intensity but there was little noticeable physiological improvement in the damaged heart tissue. He was progressively able to resume his former work. The court distinguished Farrell v. United States, supra, by stating that in contrast to that case Gibson was far from completely disabled. It found that after continuing under the treatment of his physician for about three years Gibson was able to re-

turn to work for successively longer and longer periods. Thus it was found that the palliative treatment which the plaintiff had received was "treatment of a curative nature" within the meaning of the *Farrell* case.

The court found that the testimony established that freedom from pain and discomfort are important to recovery of the victim from a heart attack although they do not remove the physical damage which the heart suffered in the attack.

Following the doctrine of the *Gibson* case the Court of Appeals for the Third Circuit in Neff v. Dravo Corporation, 407 F.2d 228 [3rd Cir. 1969], further defined the exception to the termination of the maintenance and cure in a case where a jury verdict was rendered upon a charge by the court that: "If you find that as of July the 27, 1964, he was not cured but suffered a condition that was incurable as of that date, even though further medical care might be of benefit in arresting the further progress of his disease, or in giving him relief from pain or discomfort, he is, likewise, not entitled to recover on this claim beyond the amount agreed to." (p. 235) The Court of Appeals found this language of the charge too narrow and confining in the light of a final diagnosis of the medical witness, Dr. Sherman. The court found that "At least in cases where, as here, the medication is allegedly necessary to arrest what would otherwise be a deteriorating condition, we think it may be of a sufficiently curative nature to be encompassed within the doctrine of maintenance and cure. Accordingly, in the light of the facts *of this record,* we hold the claim here to be embraced within the connotation of 'cure', as used in the phrase 'maintenance and cure.' (emphasis ours)". (p. 235)

Finally in Ward v. Union Barge Line Corp., 443 F.2d 565 [3rd Cir. 1971] our Court of Appeals has extended the obligation to render maintenance and cure to situations where medical care is needed to arrest pain.

"In Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 [1949], it was held that the liability for maintenance and cure does not extend beyond the time when the maximum possible cure has been effected. However, this limitation has been interpreted in this court to extend the obligation where medical care is needed to arrest further progress of the disease *or* to relieve pain. (emphasis supplied). Neff v. Dravo Corp., 407 F.2d 228 [3rd Cir. 1969]; see also Yates v. Dann, 124 F.Supp. 125 [D.Del.1954], aff'd, 223 F.2d 64 [3rd Cir. 1955]; Gibson v. United States, 100 F.Supp. 954 [E.D.Pa.1951], aff'd, 200 F.2d 336 [3rd Cir. 1952]."

■ Because the testimony in this case has established without contradiction that the physiotherapy treatments and the medication taken were for the relief of pain and discomfort it appears that there was a continuing obligation of the employer to provide this medical treatment. Because at the prior trial of this case it was admitted that the employer had furnished all the required medical care to the date of trial and no claim for medical care was being asserted, this obligation continues from the time of the trial to the date of the death of plaintiff's decedent. A computation of the allowable medical expenses will be made from the evidence submitted by the plaintiff at the time of trial.

The *Neff* and *Ward* doctrines are peculiar to this circuit. Elsewhere a seaman is not entitled to "cure" past the point at which his condition cannot be further improved. Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L. Ed. 850 [1949]; Fitzgerald v. United States Lines, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 [1963]; Travis v. M. V. Rapids Cities, 315 F.2d 805 [8th Cir. 1963]; Desmond v. United States, 217 F.2d 948 [2nd Cir. 1954]; Stewart v. Waterman S. S. Corp., 409 F.2d 1045 [5th Cir. 1969]; Berke v. Lehigh Marine Disposal Corp., 435 F.2d 1073 [2nd Cir. 1970].

Because the period of time under the *Farrell* rule was usually limited to the

period in which the "cure" could effect some improvement in the claimant's condition, the problem of a long continued liability of the shipowner rarely arose. The period of time for which a seaman may have maintenance is presumably limited to the same period for which he is entitled to medical expenses. Under the *Farrell* doctrine both would be so limited but under *Neff* and *Ward* where the palliative treatment can bring no improvement, the obligation of the shipowner may be lifelong. Because the claimant can only recover for past expenses actually incurred the seaman may bring a series of successive suits, a prior recovery being no bar to a subsequent action. Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L. Ed. 993 [1939]. "Thus the seaman is to keep biting at his cherry." Robinson, Admiralty [1939], p. 299.

The Supreme Court noted in Fitzgerald v. United States Lines, 374 U.S. 16, 20, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 [1963] that "an end should be put to such an unfortunate, outdated, and wasteful manner of trying these cases," i. e. the separate considerations of elements of liability and damages in the negligence and the maintenance and cure claims. The remedy was to try all claims together before a single trier of fact, the jury. The Supreme Court thus mandated what Judge Wyzanski had suggested in Jenkins v. Roderick, 156 F. Supp. 299 [D.Mass.1957].

Where all of the claims are brought at one time the trial court may follow the detailed instructions for their submission to the jury provided by Judge Wyzanski, but we have no similar guidelines from the decided cases where the maintenance and cure claim is filed and tried subject to the jury verdict in the negligence action which was rendered upon a claim and supporting evidence of total and permanent disability.

The Court of Appeals reminded the trial court that in the retrial of the *Neff* action "in charging the jury, the lower court will be guided so as not to duplicate damages in its total award . . . ." (407 F.2d p. 235). This is a problem that we face in the instant case by reason of a separate trial of the maintenance and cure claim.

It appears to us that in the trial of the action at Civil Action No. 64–724, the plaintiff submitted to the jury his claim that he was totally and permanently disabled from engaging in work of the kind that he was accustomed to do for a period of his remaining work life expectancy of approximately twenty-one years.

Plaintiff's counsel argued to the jury that adding up the plaintiff's earnings of $7,600 per year for the next twenty-one years would total a loss of future earning power in approximately the amount of $160,000. This sum would have to be reduced to present worth which over the period of calculation with which we are concerned would reduce plaintiff's claimed damages to about half of the total argued.

However, the jury also heard testimony which could cause it to reduce or mitigate the damages for total disability. The jury heard evidence on plaintiff's prior medical history and the existence of a congenital spinal defect which could be the cause or contribute to the symptoms of which he was complaining. There was also evidence of spurring and osteoarthritis in the spine which was claimed to be unrelated to the accident for which suit was being brought, and which combined with plaintiff's obesity, made him subject to the symptoms and contributed to the disability claimed. Plaintiff's medical history included an injury while in military service in 1943 for which he had filed a service connected disability claim, and an accident at work in 1960. All of these were for the consideration of the jury in determining the damages to be awarded for the total disability which he claimed at the trial in 1966.

Under such circumstances we find the jury's verdict of $75,000.00 included the monetary value of the loss of future earning power suffered by the plaintiff

as a result of the accident in suit, in addition to the other items of damages, and that the plaintiff was indeed totally and permanently disabled from continuing his past employment, and consequently awarding him the monetary value of his earning power for the remainder of his expectable work life.

■ Under these circumstances we believe that the plaintiff's present claim for maintenance from and after the date when his employer ceased paying maintenance would result in a duplication of the damages awarded by the jury for the injuries and loss claimed in the civil action verdict at Civil Action No. 64–724.

"It is obvious on principle that a plaintiff who has recovered medical expenses, a living allowance or unearned wages under the name of maintenance and cure has no right to recover them a second time in a damage action. Thus any maintenance and cure expenses which have been recovered as damages ought to be subtracted from a maintenance and cure award and vice versa. When a jury has awarded damages on principles best known to itself, it may be easier to say that the deduction ought to be made than to make it. Nevertheless the trial judge, on appropriate motion, can, and often will, achieve rough justice. The separation of the maintenance and cure items from the damage items of the recovery is probably harder to control judicially when they all go to a jury together in the same action, so that the more than usually astute counsel who brings the maintenance and cure action separately when there is no need to do so may well be outsmarting his own client." (footnote omitted). Gilmore and Black, The Law of Admiralty, Ch. VI. p. 261

This problem was treated in another aspect in McCarthy v. American Eastern Corp., 175 F.2d 727 [3rd Cir. 1949] where the seaman pursued his negligence action and his maintenance and cure action in the same trial before the district court. The negligence action was submitted to the jury and the maintenance and cure action was determined by the trial judge. The seaman received a verdict of $22,500 in the negligence action but in the admiralty action for maintenance and cure the trial judge found that the libellant in the civil action had recovered damages in an amount adequate to cover not only his loss of monetary earnings but also any loss he might have had by reason of being deprived of his board and lodging in his occupation as a seaman. The trial judge concluded that to permit a recovery in the suit for maintenance would be to award a duplication of compensatory damages and therefore ordered judgment for respondent which was the subject of the appeal. The court affirmed the findings of the trial judge.

"While the recovery by an injured seaman of a judgment for maintenance has been held not to bar a subsequent suit by him for indemnity upon the ground of unseaworthiness or negligence it does not follow that a particular item of his claim, such as maintenance, if recovered in one suit, may again be recovered in another. For in the admiralty as elsewhere in the law a litigant may not recover compensation for a single claim more than once. The ancient rule in the admiralty that the vessel and their owner must provide an injured seaman with maintenance was intended to assure him three meals a day and a bed in which to sleep during his treatment and convalescence." (p. 729).

The Court of Appeals found that the libellant did claim the equivalent of his maintenance in his civil action for damages. While a seaman who has not claimed his maintenance in a civil action for damages is not deprived of his right to recover maintenance in a subsequent suit we are of the opinion that when a seaman submits his claim of permanent future disability and loss of earning power, to a jury in a negligence suit and has received an award that the court considers adequate to compensate him

for a future total loss of earning power he has in effect recovered the total loss that he suffered by reason of the injury including the monetary benefit of the seaman's right to maintenance during his disability. The jury in the civil action at No. 64–724 were not advised that the plaintiff had been receiving a monetary allowance for maintenance up to the time of the trial and thus could not have considered this matter in reduction of the damages for wages lost prior to the trial. Similarly, the jury were not permitted to consider the possibility that plaintiff might make a claim for damages for maintenance after their verdict to the effect that the jury's verdict represented the jury's determination of the monetary value reduced to present worth of the entire permanent and total disability which plaintiff was claiming in the action before them. Furthermore, we do not find that there was any proof of consequential damages from the defendant's failure to pay maintenance and cure after the verdict and after defendant ceased paying maintenance in December 1966. By virtue of the verdict which defendant received in 1966 it would appear that plaintiff would be able to secure and pay for his own medical care from the proceeds of that verdict and, therefore, his right of recovery would be limited to the amounts actually paid. Furthermore, since the plaintiff did receive the medical care for which he makes claim there is no basis for a claim of aggravation or worsening of his condition by reason of the defendant's failure to furnish such maintenance and cure. Similarly, we find no basis for the award of counsel fees.

## DAMAGES

Having concluded that the plaintiff has established a right to cure for the relief of the pain and suffering established, we find from the evidence presented the following items of payment by the plaintiff for such medical treatment from and after the date of the verdict rendered in the negligence action.

| 1966 | Physiotherapy (McKeesport Hospital) | | |
|---|---|---|---|
| | 88 treatments | $693.00 | |
| | Travel 88 trips at $1.21 | 106.48 | |
| | Dr. Landay—8 visits | 40.00 | |
| | Drugs | 59.02 | |
| | | $898.50 | |
| | Plus interest from 12/31/66 to 12/31/73 | 377.37 | $1,275.87 |
| 1967 | Physiotherapy (McKeesport Hospital) | | |
| | 36 treatments | 333.00 | |
| | Travel 36 trips at $1.21 | 43.56 | |
| | Dr. Landay—6 visits | 36.00 | |
| | Drugs | 18.65 | |
| | | 431.21 | |
| | Plus interest from 12/31/67 to 12/31/73 | 155.24 | 586.45 |
| 1968 | Physiotherapy (McKeesport Hospital) | | |
| | 29 treatments | 277.00 | |
| | Travel 29 trips at $1.21 | 35.09 | |
| | Dr. Landay—5 visits | 30.00 | |
| | Drugs | 9.71 | |
| | | 351.80 | |
| | Plus interest from 12/31/68 to 12/31/73 | 105.54 | 457.34 |
| 1969 | Physiotherapy (McKeesport Hospital) | | |
| | 21 treatments | 205.00 | |
| | Travel 21 trips at $1.21 | 25.41 | |
| | Dr. Landay—3 visits | 18.00 | |
| | Drugs | 12.60 | |
| | Dr. Sherman | 95.00 | |
| | | 356.01 | |
| | Plus interest from 12/31/69 to 12/31/73 | 85.44 | 441.45 |
| 1970 | Physiotherapy (McKeesport Hospital) | | |
| | 14 treatments | 140.00 | |
| | Travel 14 trips at $1.21 | 16.94 | |
| | Dr. Landay—2 visits | 14.00 | |
| | | 170.94 | |
| | Plus interest from 12/31/70 to 12/31/73 | 30.78 | 201.72 |
| 1971 | Physiotherapy (McKeesport Hospital) | | |
| | 6 treatments | 60.00 | |
| | Travel 6 trips at $1.21 | 7.26 | |
| | | 67.26 | |
| | Plus interest from 12/31/71 to 12/31/73 | 8.07 | 75.33 |

1972 Physiotherapy (McKeesport
Hospital)

| | | |
|---|---|---|
| 4 treatments | 44.00 | |
| Travel 4 trips at $1.21 | 4.84 | |
| Dr. Sherman | 20.00 | |
| | 68.84 | |
| Plus interest from 12/31/72 to 12/31/73 | 4.13 | 72.97 |
| Total ........................ | | $3,111.13 |

Judgment will be entered accordingly.