Veronica **COX**, Administratrix of the Estate of William D. Cox, Appellant in No. 74–1609,

v.

**DRAVO CORPORATION**, Appellant in No. 74–1576.

Nos. 74–1576, 74–1609.

United States Court of Appeals, Third Circuit.

Submitted Jan. 21, 1975.

Reargued En Banc May 9, 1975.

Decided May 29, 1975.

Bruce R. Martin, Pittsburgh, Pa., for appellant in No. 74–1576.

Hymen Schlesinger, Pittsburgh, Pa., for appellant in No. 74–1609.

Submitted Jan. 21, 1975

Before VAN DUSEN, GIBBONS and HUNTER, Circuit Judges.

Rehearing before the Court en banc May 9, 1975

Before SEITZ, Chief Judge, and VAN DUSEN, ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS and GARTH, Circuit Judges.

OPINION OF THE COURT

GIBBONS, Circuit Judge.

We are asked in these appeals to reconsider the rule peculiar to this circuit, announced in Neff v. Dravo Corp., 407 F.2d 228 (3d Cir. 1969), and followed in Ward v. Union Barge Line Corp., 443 F.2d 565 (3d Cir. 1971). In those decisions we held that a seaman is entitled to maintenance and cure not only up to the time treatment for his illness or injury has achieved maximum recovery possible, but extended thereafter, when the seaman has become totally and permanently disabled, so long as medical care is necessary to arrest further progress of the disease or to relieve pain. We conclude that the *Neff* and *Ward* holdings are inconsistent with the limitations on the maintenance and cure remedy imposed by the Supreme Court and must be overruled to the extent of such inconsistency. The instant case strikingly demonstrates the conflict between our *Neff* and *Ward* holdings and those of the Supreme Court.

The suit below was filed by William Cox, an injured seaman, against his ship's owner, the Dravo Corporation, in April, 1968. When Cox died in August, 1973, his widow and administratrix was substituted as plaintiff. The plaintiff sought maintenance and cure under the general maritime law, and under the Jones Act, 46 U.S.C. § 688, consequential damages allegedly arising from Dravo's negligent failure to provide these remedies.

In a previous case Cox had sued under the Jones Act and general maritime law for personal injuries by reason of negligence and unseaworthiness. In that action he claimed total and permanent disability, and sought recovery for pain and suffering, past and future, and for lost earnings, past and future. Medical evidence introduced in the first case indicated that Cox was permanently and totally disabled. The jury apparently so found, for it returned a general verdict for the plaintiff in the amount of $75,-000.00.

In the first trial no claim for maintenance and cure was submitted to the jury. This was not in disregard of the rule of Fitzgerald v. United States Lines, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963), that such claims, when joined with a Jones Act claim growing out of

the same set of facts, must be submitted to the same jury. At the time of the first trial no claim for maintenance and cure was made because the owner of the vessel had paid maintenance at the rate of $47.50 per week from June 28, 1964, the date of plaintiff's injuries until December 7, 1966, almost a year after the jury verdict which had established Cox's permanent and total disability. Dravo had also paid for medical expenses until January, 1966, the date of trial in the first suit.

In 1968 the instant suit was filed, seeking maintenance at the rate of $8.00 a day from December 7, 1966, and medical expenses incurred by Cox after that date, medical expenses incurred by Cox prior to that date not recovered in the first action, and consequential damages for pain and suffering caused by defendant's alleged negligent failure and refusal to continue to provide maintenance and cure. The case was tried without a jury. It was stipulated that the court would consider the entire record of the earlier action. In addition, testimony was presented that after December 7, 1966, Cox was unable to perform any strenuous activity, that he suffered headaches and dizzy spells, that he took medicines and physical therapy treatments prescribed by his doctor, and that the physical therapy treatments made Cox feel better and relieved his aches and pains. Plaintiff's medical witness testified that the effect of the treatments received after December 7, 1966 was solely the relief of pain and discomfort, that no cure would be effected from such treatments, and that they would not arrest Cox's progressively deteriorating physical condition. The cost of physiotherapy and medical treatment from December 7, 1966 until Cox's death

on August 8, 1973, with interest, totalled $3,111.13. The district court entered judgment for plaintiff in this amount for cure, but allowed no award on the claim for maintenance, which at the stipulated rate of $8.00 a day for some 2,453 days, totalled $19,524.00 plus interest. The defendant appeals from the $3,111.13 judgment, and the plaintiff appeals from the court's refusal to enter judgment for the additional $19,524.00.

The district court, recognizing that Cox had become permanently and totally disabled prior to the jury verdict in the first case, and that no treatment would cause an improvement in his condition, nevertheless felt bound by the *Neff* and *Ward* decisions to impose on the vessel the cost of physiotherapy and medication for the relief of Cox's pain and discomfort until the seaman's death. The court held, however, that the $75,000 verdict in the first case, which included the monetary value of the loss of future earning power suffered as a result of the accident in suit, barred recovery for maintenance, since such an award would result in duplication of the damages awarded by the jury.[1]

The latter holding puts into sharp relief the analytical difference between the maintenance and cure remedy on the one hand, and the indemnification remedies for negligence, unseaworthiness, or workmen's compensation on the other. The Jones Act[2] permits recovery for personal injury or sickness caused by negligence, and general maritime law permits a similar recovery for unseaworthiness of a vessel. The Federal Employees Compensation Act permits recovery for personal injury or sickness sustained in the performance of duties of

---

1. Cox v. Dravo Corp., 372 F.Supp. 1003 (W.D. Pa.1974).

2. 46 U.S.C. § 688. This provision originally appeared as section 33 of the Merchant Marine Act of 1920, ch. 250, § 33, 41 Stat. 1007, which amended the Seaman's Welfare Act of Mar. 4, 1915, ch. 153, § 20, 38 Stat. 1185. The Jones Act expressly incorporated the Federal Employees Liability Act (FELA), and thus the

judicial principles developed under the FELA are also applicable to the Jones Act. *See, e. g.,* Kernan v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958).

Almost simultaneously with the Jones Act, Congress enacted The Death on the High Seas Act (DOHSA) which allows recovery in admiralty by specified relatives for the death of any person "caused by wrongful act, neglect, or

employment.[3] Although in this case, Cox's condition resulted from an accident sustained as a result of negligence or unseaworthiness, and apparently while he was performing duties of employment, such factors are not relevant to the recovery for maintenance and cure. That remedy is available to any seaman who becomes ill or injured while in the service of his ship, and not even his own negligence will bar recovery.[4] The remedy has nothing to do with his employer's duty to indemnify him for permanent injury; a duty which arises from other sources. Maintenance is the equivalent of the food and lodging to which the seaman is entitled while at sea, even if ill or injured, and cure is the equivalent of the medical care to which an ill or injured seaman is entitled while at sea. Thus, we cannot agree with the district court that the jury verdict indemnifying Cox for his total and permanent disability was duplicative of the vessel's entirely separate obligation to provide maintenance and cure.

However, that does not end the inquiry, for although the obligation to provide maintenance and cure is separate from any duty of indemnification or compensation for employment-related injuries, it is clearly not an open-ended duty to provide food, lodging and medical care for the total duration of every illness or injury incurred while in the service of a vessel. Yet the thrust of the *Neff* and *Ward* cases seems to be that this is indeed the scope of a vessel's duty in this circuit. For so long as palliative treatment to arrest further progress of the disease or to relieve pain

is still medically possible, these decisions permit an award of maintenance and cure even when a seaman has become totally and permanently disabled. In the hypothetical context of an illness entirely unrelated to the seaman's employment, a malignancy for example, the rule on its face seems expansive. Such a result is not, we believe, permitted by the definition of maintenance and cure in Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938) and Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949), recently reiterated in Vella v. Ford Motor Co., 421 U.S. 1, 95 S.Ct. 1381, 43 L. Ed.2d 682 (1975). *See also* Salem v. United States Lines, 370 U.S. 31, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1970).

The obligation of the vessel to provide maintenance and cure first appeared in American maritime law in Harden v. Gordon, 11 F.Cas. 480 (No. 6,047) (C.C.D. Me.1823). In that well-known decision Justice Story wrote:

"My opinion is that if the plaintiff is entitled to be cured at the expense of the ship, it is a claim in the nature of additional wages during the period of sickness, and is just as proper for a suit [in admiralty], as a claim for additional pay, while in port, or for subsistence in port, where that has been unjustly withheld. It stands upon the same analogy, as the compensation allowed by our laws in cases of short allowance of provisions and water, where it is expressly provided, that the amount shall be recoverable in the same manner as wages. . . ." *Id.* at 482.

default occurring on the high seas beyond a marine league from the shore of any State." 46 U.S.C. § 761 et seq.

**3.** Federal Employees Compensation Act, Act of Sept. 7, 1916, ch. 458, § 40, 39 Stat. 750, as amended, 5 U.S.C. § 8101 et seq. The Supreme Court has held that civilian seamen employed on public vessels operated by the United States are limited to the remedies provided by the Federal Employees Compensation Act, since the United States, unlike private shipowners can be sued only upon its own terms under the doctrine of sovereign immunity.

Patterson v. United States, 359 U.S. 495, 79 S.Ct. 936, 3 L.Ed.2d 971 (1959); Johansen v. United States, 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051 (1952); Aho v. United States, 272 F.Supp. 990 (E.D.La.1967).

*See also* Suits in Admiralty Act, 46 U.S.C. § 741 et seq.; Public Vessels Act, 46 U.S.C. § 781 et seq.

**4.** *See* Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 527, 58 S.Ct. 651, 82 L.Ed. 993 (1938); 2 M. Norris, The Law of Seamen § 661, at 30–33 (3d ed. 1970).

Harden v. Gordon, while recognizing that the vessel's duty to provide maintenance and cure had some shore-side aspects, did not specify how long after the termination of the voyage these obligations continued. In Reed v. Canfield, 20 F.Cas. 426 (No. 11,641) (C.C.D.Mass. 1832), Justice Story attempted to delineate the extent of the obligation. He wrote:

> "It has been asked, if, in a claim of this sort, the expenses of cure are to be paid by the ship, what are the limits of the allowance? May they be extended over years or for life? Are they to be, like the pensions allowed by some marine ordinances, in cases of wounds and other injuries, received by seamen in defending the ship from the attacks of pirates? My answer to suggestions of this sort is, that the law embodies, in its very formulary, the limits of the liability. The seaman is to be cured at the expense of the ship, of the sickness or injury sustained in the ship's service. . . . The sickness or other injury may occasion a temporary or permanent disability; but that is not a ground for indemnity from the owners. They are liable only for expenses necessarily incurred for the cure; and when the cure is completed, at least so far as the ordinary medical means extend, the owners are freed from all further liability. . . ." *Id.* at 429.

These decisions by Justice Story in the old circuit courts in the Districts of Maine and Massachusetts were not regarded by his near contemporaries in other districts as definitive on the extent of the vessel's obligation. Some judges regarded his formulation as too open-ended, and suggested that the proper limit was the period during which the seaman was entitled to receive wages. *See, e. g.,* The Atlantic, 2 F.Cas. 121 (No. 620) (D.C.S.D.N.Y.1849); Nevitt v. Clarke, 18 F.Cas. 29 (No. 10,138) (D.C.S. D.N.Y.1846). After admiralty jurisdiction was extended to the Great Lakes in The Genesee Chief v. Fitzhugh, 53 U.S. (12 How.) 443, 13 L.Ed. 1058 (1851), the District Court in Wisconsin recognized a duty of maintenance and cure to seamen on those waters, but restricted the obligation to the termination of the seaman's contract for wages. The Ben Flint, 3 F.Cas. 183 (No. 1,299) (D.C.D. Wis.1867). As late as 1890, Judge (later Justice) Brown criticized the open-endedness of the Reed v. Canfield formulation, attributing it to Story's

> "well-known leaning toward the admiralty courts, and his belief in the beneficence of their jurisdiction and forms of relief, [which] may have had a certain influence in inducing him to extend its aid to cases not properly within its purview. . . ." The J. F. Card, 43 F. 92, 94 (D.C.E.D.Mich. 1890).

Harden v. Gordon and Reed v. Canfield were appeals to the old circuit courts from district court decisions. Except for these, there were no appellate decisions discussing the scope of the maintenance and cure obligation until 1903. In The Oceola, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 (1903), Justice Brown, who thirteen years before had criticized Story's formulation, wrote:

> "[T]he vessel and her owners are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued. . . ."

This, of course, left open post-voyage liability. The district court in Massachusetts, as might be expected in Justice Story's old circuit, continued to follow Reed v. Canfield. The Henry B. Fiske, 141 F. 188 (D.Mass.1905); McCarron v. Dominion Atlantic Ry. Co., 134 F. 762 (D.Mass.1905). The first new circuit court to consider a maintenance and cure issue was the Third Circuit in The Mars, 149 F. 729, 731 (3d Cir. 1907). Judge Buffington, citing the Massachusetts district court cases held:

> "The duty is to furnish means of cure and to use all reasonable efforts for that purpose. . . . In the nature of things the end of the voyage does

not end the obligation, if there was not sufficient time and facilities for the vessel to have done its duty. Its unfulfilled obligation may continue after the voyage ends. . . ."

The Mars, however, did not tell us how long after. The Supreme Court did not speak to that issue between 1907, when this circuit adopted the position that there was post-voyage liability and 1937 when Judge Maris held in Calmar S. S. Corp. v. Taylor, 92 F.2d 84, 87 (3d Cir. 1937) that the obligation to provide maintenance and cure for a seaman who contracted an incurable and progressive disease continued throughout his life. He reasoned that since the need for medical treatment to arrest or delay progress of the disease would continue for life, life was a reasonable time span to impose the obligation.[5] That holding, a considerable enlargement of the Reed v. Canfield formulation, certainly would support the *Neff* and *Ward* results. It was, however, reversed by the Supreme Court in Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938). The Court wrote:

"There remain the questions whether in the case of a chronic illness the duty continues so long as medical attendance and care are beneficial, until death if the need lasts so long, and whether a lump sum may be awarded to defray the costs of meeting the anticipated need. . . .

We can find no basis for saying that, if the disease proves to be incurable, the duty extends beyond a fair time after the voyage in which to effect such improvement in the seaman's condition as reasonably may be expected to result from nursing, care, and medical treatment. This would satisfy such demands of policy as underlie the imposition of the obligation. Beyond this we think there is no duty, at least where the illness is not caused by the seaman's service." *Id.* at 530, 58 S.Ct. at 654.

The Court also disapproved the award of a lump sum in anticipation of the continuing need for maintenance and cure in the future.[6] The last clause in the quoted language, distinguishing illness caused by the seaman's work, left it open to argument that the extended duty envisioned by Judge Maris might be owed to one such as Cox (and Neff and Ward) whose disabilities were caused by work-related injuries. But in Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949), that interpretation was foreclosed when Justice Jackson, referring to the quoted language wrote:

5. Judge Maris concluded:

As we have indicated, the libelant is suffering from an incurable disease contracted while in the service of respondent's vessel. This alone would not entitle him to maintenance and care by the respondent for life, since the obligation of the latter ends when it has provided him with the ordinary means of cure which medical science affords. However, in the present case we have the further fact that the incurable disease from which the libelant suffers is of a progressive nature and is very likely to produce fresh manifestations in the future in other parts of his body. The uncontradicted evidence indicates that continuing care and treatment is of the utmost importance in arresting the further progress of the disease. Under these circumstances we cannot say that the ordinary means which medical science affords for the treatment and care of this disease will be exhausted prior to his death. On the contrary, during the remainder of his life

medical care will be necessary to restrain the ravages of the disease. His remaining life is, therefore, a reasonable time during which to provide maintenance and cure. It follows under the principles of the admiralty law to which we have referred that he is entitled to the cost of his maintenance and care from the respondent during the remainder of his life. . . ." 92 F.2d at 87.

6. The issue of declaratory relief with respect to future liability for maintenance and cure, either pendant to a Jones Act claim, or in a counterclaim, is not presented here. It would seem, however, that a second lawsuit might have been avoided by the assertion of such a counterclaim in the first case. That course would be consistent with the Supreme Court's direction in Fitzgerald v. United States Lines, *supra*, that multiplicity of actions in seamen's cases be reduced. 374 U.S. at 21, 83 S.Ct. 1646.

"It is claimed that when the Court reserved or disclaimed any judgment as to cases where the incapacity is caused 'by the employment' or 'by the seaman's service' it recognized or created such cases as a separate class for a different measure of maintenance and cure. We think no such distinction exists or was premised in the *Calmar* case. . . ." *Id.* at 515, 69 S.Ct. at 709.

Between 1938, when *Calmar* was decided, and 1949 when *Farrell* reached the Court, the Senate had ratified the Shipowners' Liability Convention of 1936 which provided in article 4, paragraph 1:

"The shipowner shall be liable to defray the expense of medical care and maintenance until the sick or injured person has been cured, or until the sickness or incapacity has been declared of a permanent character." 54 Stat. 1693, 1696.

The *Farrell* majority adopted this test as the measure of the obligation of American vessels despite the provision in article 12 of the treaty that a more favorable national law or custom could apply.[7]

*Farrell* holds explicitly that the duty of maintenance and care ends when a disability has been found to be permanent. The only exception it recognizes is the possibility of recovering for *curative* treatment in a later proceeding, and of maintenance while receiving such treatment. 336 U.S. at 519. In the context of the *Farrell* opinion, this reference is clearly to treatment of a *curative* nature such as a new drug or a new surgical technique, and not to the palliatives which seaman Farrell still required. The Court's unanimous affirmance, in Salem v. United States, 370 U.S. 31, 37, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962), of a denial of future maintenance and cure suggests that the Court is satisfied with the limitations on liability for maintenance and cure set forth in the treaty and judicially

adopted for American vessels in *Farrell. See also* Fitzgerald v. United States Lines, 374 U.S. 16, 19 n. 7, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963); Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). The opportunity to reconsider *Farrell* was presented in Vella v. Ford Motor Co., *supra,* but the Court, aware of our holdings in *Neff* and *Ward,* reiterated adoption of the standard of the Convention.[8]

We applied the *Farrell* test correctly in Sobosle v. United States Steel Corp., 359 F.2d 7 (3d Cir. 1966). However in Neff v. Dravo Corp., *supra,* we reversed a district court judgment on a verdict for defendant because the trial court had charged:

" 'If you find that as of July the 27th, 1964, he was not cured but suffered a condition that was incurable as of that date, even though further medical care might be of benefit in arresting the further progress of his disease, or in giving him relief from pain or discomfort, he is, likewise, not entitled to recover on this claim beyond the amount agreed to.' " 407 F.2d at 235.

That charge was precisely consistent with the Supreme Court's holdings in *Calmar* and *Farrell*. Nevertheless we said:

"At least in cases where, as here, the medication is allegedly necessary to arrest what would otherwise be a deteriorating condition, we think it may be of a sufficiently curative nature to be encompassed within the doctrine of maintenance and cure. Accordingly, in the light of the facts *of this record,* we hold the claim here to be embraced within the connotation of 'cure', as used in the phrase 'maintenance and cure.' " 407 F.2d at 235 (emphasis in original).

This language is almost identical with that of Judge Maris in the *Calmar* case, quoted in the margin at note 5, *supra,*

---

7. Article 12 provides:

"Nothing in this Convention shall affect any law, award, custom or agreement between shipowners and seamen which en-
sures more favourable conditions than those provided by this convention." 54 Stat. 1700.

8. *See* 421 U.S. 1 n.4, 95 S.Ct. 1381 n.4, 43 L.Ed.2d 682.

and expressly rejected by the Supreme Court on certiorari. In Ward v. Union Barge Line Corp., *supra*, we compounded the error by relying on Neff v. Dravo Corp. rather than upon the governing precedents in the Supreme Court. 443 F.2d at 572.

Plaintiff urges that Vella v. Ford Motor Co., *supra*, introduced a refinement of the *Farrell* test. In *Vella* the Court drew a distinction between incapacities permanent in fact but not so diagnosed, and injuries declared to be permanent. It held that the duty to provide maintenance and cure continued until the injury was declared to be permanent. From this plaintiff reasons that the duty to provide maintenance and cure inevitably continues until such time as there has been a *judicial* determination of permanency. We do not believe that is what the Court had in mind. We can imagine a factual dispute as to when a diagnosis of permanency was made. If there is such a dispute it must be resolved by the trier of fact. When it is so resolved the date of diagnosis so determined, not the date of the judicial determination, defines the end of the vessel's maintenance and cure obligation.

The plaintiff also urges that the verdict in the earlier Jones Act case finding a total and permanent disability did not determine when the incapacity was incurable, because permanent injury and incurability are not necessarily identical issues. We need not express a view as to the merits of that contention, however, because in this second trial, in which the record of the first trial was submitted to the trier of fact, the court made an independent determination that the injury was diagnosed as incurable no later than the time of the first trial. That determination satisfied the declaration of permanency test of Vella v. Ford

Motor Co. even if the Jones Act verdict did not.

It may be sound social policy that vessel and cargo be required to insure against the cost of palliative or preventive care and for maintenance of seamen who become permanently disabled or incurably ill while engaged in the service of the vessel. But the Supreme Court expressly rejected Judge Maris' invitation to adopt such a rule, and our judicial law-making powers, whatever their limits, are subject to that higher authority. We should not countenance the continued application in this circuit of a rule, even of our own devising, which is patently inconsistent with the Supreme Court's pronouncements. The award of cure in this case was error. The denial of maintenance was correct.

The judgment of the district court in No. 74–1576 will be reversed, and in No. 74–1609 will be affirmed. Each party will bear its own costs.

SEITZ, Chief Judge (concurring).

The record in this case establishes that the sole effect of treatments for which plaintiff sought recovery was the relief of pain suffered by Cox. I agree with the disposition of the case on the basis of the majority's holding that an award of maintenance and cure cannot be sustained on the ground of a shipowner's duty to provide medical care that can serve only to reduce pain. However, I think it unnecessary and unwise to go out of our way to announce that there is no duty to provide treatment which arrests the progress of a deteriorating physical condition. That issue is not presented by this case and, indeed, is expressly left open by the Supreme Court in Vella v. Ford Motor Co., 421 U.S. 1, 95 S.Ct. 1381, 43 L.Ed.2d 682 (1975).

Judge Adams joins in this opinion.