# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**05-0019**


**CAROL DEJEAN**

**VERSUS**

**ST. CHARLES GAMING COMPANY, INC.**


\*\*\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT,
PARISH OF CALCASIEU, NO. 2000-3694,
HONORABLE ROBERT L. WYATT, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*\*\*


**JIMMIE C. PETERS**
**JUDGE**


\*\*\*\*\*\*\*\*\*\*\*\*


Court composed of Chief Judge Ulysses Gene Thibodeaux and Judges John D. Saunders and Jimmie C. Peters.


**AFFIRMED.**

**Jennifer Jones**
**Jones Law Firm**
**Post Office Box 1550**
**Cameron, LA 70631**
**(337) 775-5714**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Carol Dejean**

**Brian D. Wallace**
**Anne Derbes Keller**
**Phelps Dunbar, LLP**
**Canal Place**
**365 Canal Street, Suite 2000**
**New Orleans, LA 70130-6534**
**(504) 566-1311**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **St. Charles Gaming Company, Inc.**

PETERS, J.

The defendant, St. Charles Gaming Company, Inc., d/b/a Isle of Capri Casino—Lake Charles (St. Charles Gaming), appeals the trial court's grant of a partial summary judgment ordering that it reinstate the payment of maintenance and cure benefits to the plaintiff, Carol Dejean, effective April 14, 2004. For the following reasons, we affirm the trial court's judgment in all respects.

## DISCUSSION OF THE RECORD

The underlying facts giving rise to this appeal are not in dispute. On July 14, 1999, Carol Dejean sustained an injury while in the course and scope of her employment with St. Charles Gaming. At the time of her injury, she was an American seaman and a member of the crew of the M/V GRAND PALAIS, a gaming vessel in navigation, owned by St. Charles Gaming and physically located in Calcasieu Parish, Louisiana. After sustaining her injury, she filed a Jones Act and general maritime claim against St. Charles Gaming. The claim also included a demand for maintenance and cure due under the general maritime law.

St. Charles Gaming initially paid maintenance and cure, but ceased doing so on April 14, 2004.[1] Additionally, St. Charles Gaming refused to pay for Botox injections for Ms. Dejean that were recommended by Dr. Frank Lopez, a physical medicine and rehabilitation specialist and Ms. Dejean's treating physician. Thereafter, on June 9, 2004, Ms. Dejean filed a motion for partial summary judgment, seeking reinstatement of maintenance and cure benefits, an order authorizing certain treatments recommended by her physician, and attorney fees for the prosecution of the motion. After the July 8, 2004 hearing on the motion, the trial court granted Ms.

---

[1] We note that in the record the parties state that the date of termination of maintenance and cure was April 12, 2004. However, the judgment refers to that date as being April 14, 2004, and the parties have not questioned that date on appeal. Thus, for consistency with the trial court's judgment, we will refer to the date of termination of maintenance and cure as being April 14, 2004.

Dejean's request for reinstatement of maintenance and cure retroactive to April 14, 2004; granted her request to have St. Charles Gaming authorize and pay for the medical treatment recommended by Dr. Lopez; and granted her request to have St. Charles Gaming reimburse her for all medical expenses incurred and paid in connection with her treatment after April 14, 2004. The trial court rejected Ms. Dejean's request for attorney fees. Additionally, the trial court rejected St. Charles Gaming's motion for new trial. Thereafter, the trial court granted St. Charles Gaming's request to certify the partial summary judgment as a final, appealable judgment pursuant to La.Code Civ.P. art. 1915(B) and granted St. Charles Gaming's motion for a suspensive appeal.

## ASSIGNMENTS OF ERROR

St. Charles Gaming assigns three errors, as follows:

I. The trial court erred in granting plaintiff's Motion for Partial Summary Judgment to Reinstate Maintenance and Cure where plaintiff's treating physician testified that the only treatment being provided and recommended to plaintiff was for the purpose of attempting to alleviate pain.

II. In the alternative, the trial court erred in failing to find that material issues of fact relating to whether plaintiff had reached maximum medical improvement precluded the granting of plaintiff's Motion for Partial Summary Judgment to Reinstate Maintenance and Cure.

III. The trial court erred in failing to grant defendant's Motion for New Trial where the trial court's order granting plaintiff's Motion for Partial Summary Judgment to Reinstate Maintenance and Cure encompassed cure obligations beyond the treatment contained in plaintiff's motion and made known to the court and defense counsel.

## OPINION

### *Scope of Review and Applicable Law*

"Appellate courts review summary judgments *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is

appropriate." *Ross v. Conoco, Inc.*, 02-299, p. 5 (La. 10/15/02), 828 So.2d 546, 550. To obtain maintenance and cure during litigation, a plaintiff may utilize the remedy of a motion for summary judgment. *Bourque v. Norman Offshore Pipelines, Inc.*, 93-891 (La.App. 3 Cir. 3/2/94), 634 So.2d 1363. "[T]he right to maintenance and cure must be construed liberally . . . ." *Barnes v. Andover Co., L.P.*, 900 F.2d 630, 633 (3rd Cir. 1990). "Cure" involves the payment of therapeutic, medical, and hospital expenses, that are not otherwise furnished to the seaman, until the point of maximum cure. *Pelotto v. L & N Towing Co.*, 604 F.2d 396 (5th Cir. 1979); *Taylor v. Mutual of Omaha Ins. Co.,* 520 So.2d 1122 (La.App. 3 Cir. 1987). "When maintenance and cure terminates is a question of fact to be determined on the evidence presented." *Thurman v. Patton-Tully Transp. Co.*, 619 So.2d 879, 881 (La.App. 3 Cir. 1993). The duty of the shipowner to furnish medical care continues until the sick or injured person has been cured or until the sickness or incapacity has been declared to be permanent. *Farrell v. United States*, 336 U.S. 511, 69 S.Ct. 707 (1949). Maintenance and cure extends during the period when a seaman is incapacitated and continues until he reaches maximum medical recovery. *Breese v. AWI, Inc.*, 823 F.2d 100 (5th Cir. 1987). It is the medical, not the judicial, determination of permanency that results in the termination of the right to maintenance and cure. *Id.* "[M]aximum cure is achieved when it appears probable that further treatment will result in no [b]etterment of the seaman's condition." *Pelotto*, 604 F.2d 396, 400. "Thus, where it appears that the seaman's condition is incurable, or that future treatment will merely relieve pain and suffering but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum cure has been achieved." *Id.*

### Assignments of Error Numbers One and Two

These assignments are so interrelated that we will discuss them together. Disposition of either or both of these assignments hinges on whether Ms. Dejean's medical condition can be factually disputed as suggested by St. Charles Gaming. In opposition to the motion for partial summary judgment, St. Charles Gaming asserts that Ms. Dejean had reached maximum medical improvement by April 14, 2004, and that the recommended Botox injections were for pain relief and were not curative.

The only medical evidence provided the trial court on this issue consisted of excerpts from the depositions of Dr. Lopez and Dr. Stephen Goldware, a neurologist. This court was recently called upon to consider the meaning of maximum medical improvement in the context of a summary judgment proceeding in *Campbell v. Higman Barge Lines, Inc.*, 02-0937 (La.App. 3 Cir. 2/5/03), 838 So.2d 80, *writ denied*, 03-629 (La. 5/2/03), 842 So.2d 1104. In that case, Campbell, who was a seaman, suffered a back injury which required surgery. Six months after the surgery, he was still suffering continual back pain, but declined surgery. Campbell's treating physician opined that he had reached maximum medical improvement, but another physician disagreed. The latter physician believed that the implant of a spinal cord stimulation device would be not merely palliative but would also improve Campbell's medical condition and his ability to pursue daily activities. On appeal, this court found that the conflict in medical testimony presented genuine issues of material fact regarding the possibility of improving the seaman's medical condition and precluded summary judgment on the issue. However, in reviewing the medical evidence in the matter now before us, we note that there is no conflict in the medical testimony considered by the trial court.

4

The record establishes that Dr. Lopez was the only physician treating Ms. Dejean in 2004. Dr. Goldware had referred Ms. Dejean to him for possible injection treatments. Before being referred to Dr. Lopez, Ms. Dejean had endured two back surgeries, and, although she continued to have back pain after the surgeries, other physicians had ruled out further surgery.

Dr. Lopez testified that the injection treatment required depended on the source of the patient's pain. He explained that a patient's pain is usually caused by either inflammation or muscle contractions. He initially injected Ms. Dejean with cortisone, which he suggested would be curative if the source of the pain were inflammation. However, the cortisone treatment was not successful.

Based on the lack of success with cortisone, Dr. Lopez concluded that some intrinsic process was causing muscle contractions, or spasms, in Ms. Dejean's back. He testified that it is very common for individuals who have had back surgery to have recurrent muscle spasms. Dr. Lopez first tried injecting Ms. Dejean with Marcaine in an attempt to alleviate her pain. However, when this treatment proved unsuccessful, he recommended Botox injections.

Dr. Lopez explained that Botox is an intramuscular nerve blocker that blocks transmission from the nerve ending into muscle tissue. It is used for reduction of tone in any muscle that is causing pain by spasm or painful muscle contraction of any kind, and he has had success with its use. According to Dr. Lopez, usually one injection will last three months and a second one will last an additional six months. The doctor testified that he has had to inject a third time in only one or two patients. In any event, whether one, two, or three injections are required, after completion of the treatment, the pain is resolved. Concerning Ms. Dejean's prognosis, Dr. Lopez

testified that following a January 5, 2004 examination, he expected that she would be extremely functional with the Botox injections. In a progress report dated January 5, 2004, he stated that he recommended Botox and indicated in his report, "Not MMI," meaning she was not at maximum medical improvement at that time.

When asked whether Botox would cure Ms. Dejean's problem, Dr. Lopez testified that he could not state with any reasonable degree of certainty that he was curing the cause of her problem. He based this statement on the fact that he did not know exactly what caused the muscle spasm that caused the pain. Thus, while he believed he could alleviate pain, he was not sure that he was curing the condition. In explaining what he meant when he stated in his January 5, 2004 progress report that Ms. Dejean had not yet reached maximum medical improvement and that there was something more he could do, Dr. Lopez stated that "[m]aximum medical improvement is the point where the physician expects that there is not going to be any change [or] any improvement in the patient's condition for about a year or so period of time." Dr. Lopez believed that during that year, and with the use of Botox injections, he could achieve maximum medical improvement in the case of Ms. Dejean.

Arguing that the proposed treatment of Ms. Dejean was palliative only, and not curative, St. Charles Gaming relies primarily on *Cox v. Dravo Corp.*, 517 F.2d 620 (3rd Cir.), *cert. denied*, 423 U.S. 1020, 96 S.Ct. 457 (1975), which concluded that the United States Supreme Court had expressly rejected a rule that would require a defendant in a maintenance and cure case "to insure against the cost of palliative or preventive care and for maintenance of seamen who become permanently disabled or incurably ill while engaged in the service of the vessel." *Id.* at 627. We do not

6

disagree with the holding in *Cox*, but do not find it applicable to the matter now before us. In the *Cox* case, Cox, an injured seaman, brought a Jones Act and general maritime action against the owner of the vessel on which he was working and ultimately obtained a $75,000.00 general verdict for his injuries. During the pendency of that litigation, the shipowner continued to pay maintenance and cure. However, one year after the judgment, the shipowner ceased paying the maintenance and cure, and Cox brought a new suit to have the benefits reinstated. Cox died during the pendency of the second suit, and the trial court substituted his widow and administratrix as plaintiff. Thus, the only issue was whether Cox was entitled to maintenance and cure benefits between the time the shipowner terminated those benefits and his death.

The trial court concluded that the general verdict awarded in the first litigation included the monetary value of Cox's earning power and, therefore, barred his recovery for maintenance during the period in question in the second litigation. However, the trial court awarded the cost of certain medical treatment, despite having found that Cox had become totally and permanently disabled prior to the verdict in the first case. The Court of Appeals affirmed the trial court's rejection of the request for maintenance, but reversed the award for medical treatment rendered after the first trial. In doing so, the Court of Appeals enunciated the rule of law cited above.

Unlike the factual situation in *Cox*, there has been no determination that Ms. Dejean is totally and permanently disabled. Therefore, the rule of law enunciated in *Cox* is not applicable. In the present case, the medical testimony is not that Botox treatments would be *solely* for the relief of pain. Furthermore, the testimony does not rule out the prospect of ultimate cure. It does, however, establish the likelihood that

7

such treatments will arrest further deterioration of Ms. Dejean's condition by improving her condition. In fact, there is no medical testimony suggesting that her condition is permanent or incurable.

Applying the clear standard of proof as required by La.Code Civ.P. art. 966(B), the only material fact in dispute being whether the plaintiff has reached maximum medical improvement, we find that there is no genuine issue that she has not, and summary judgment was properly rendered in her favor. Thus, we find no merit in the first two assignments of error.

### *Assignment of Error Number Three*

In its final assignment of error, St. Charles Gaming complains that the summary judgment gave Ms. Dejean more relief than she requested by ordering the payment of medical bills for treatment that neither the trial court nor St. Charles Gaming knew Dr. Lopez was administering to the patient. This argument was the basis of its motion for new trial, and St. Charles Gaming asserts that the rejection of the motion for new trial was an abuse of the trial court's discretion.

The exhibits attached to the motion for partial summary judgment and to the motion and supplemental motions for a new trial establish that the additional treatment at issue was rendered after St. Charles Gaming terminated maintenance and cure. This included muscle stimulation therapy recommended by Dr. Lopez and administered by RS Medical, totaling $1,705.00. St. Charles Gaming admits receiving notice on April 15, 2004, that Dr. Lopez was ordering such treatment and admits that, having already made the decision that Ms. Dejean had reached maximum medical improvement, it denied RS Medical's request for treatment.

Because we have affirmed the trial court's summary judgment finding that Ms. Dejean has not reached maximum medical improvement, and because St. Charles Gaming has admitted that its obligation for maintenance and cure extends until maximum medical improvement has been reached, the payment of RS Medical's bills is its obligation. This is so even though the therapy was solely for the relief of pain, for St. Charles Gaming has offered no argument that medication or treatment for the relief of pain is not encompassed within the cure obligation so long as maximum medical improvement has not been attained.

Additionally, St. Charles Gaming acknowledges that it approved the following language in the trial court's judgment:

> Plaintiff's request to have defendant reimburse plaintiff for expenses paid by or on behalf of plaintiff in connection with any treatment rendered or recommended by Dr. Lopez since April 14, 2004, is GRANTED . . . .

Despite having approved the language, St. Charles Gaming now argues that its motion for new trial on this issue should have been granted because it was unaware when it approved the language that the muscle stimulation therapy had actually been administered.

St. Charles Gaming's request for a new trial does not meet the peremptory grounds for a new trial found in La.Code Civ.P. art. 1972, and any relief that may be available falls within the discretionary grounds of La.Code Civ.P. art. 1973. With regard to the interpretation of the latter Article, we note that a trial court has great discretion in determining whether a motion for a new trial should be granted. *Henderson v. Sellers*, 03-747 (La.App. 3 Cir. 12/17/03), 861 So.2d 923.

9

In our review of the record, we find no abuse of the trial court's discretion in rejecting the motion for new trial. Thus, we find that this assignment of error has no merit.

## DISPOSITION

For the foregoing reasons, we affirm the judgment of the trial court. We assess the costs of this appeal to St. Charles Gaming Company, Inc., d/b/a Isle of Capri Casino—Lake Charles.

**AFFIRMED.**